J-S17004-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| AMERICAN LAWSUIT FUNDING, LLC D/B/A VIKING FUNDS, LP | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| THE DELTA ORGANIZATION, INC., THE DELTA ALLIANCE, LLC, DELTA PROPERTIES GROUP, LP, THE DELTA PARTNERSHIPS, LLC, PHOENIX CAPITAL CORPORATION, PHOENIX PROPERTIES GROUP GP AND LANDMARK INFRASTRUCTURE HOLDING COMPANY, LLC | : | |
| | : | |
| APPEAL OF: THE DELTA ORGANIZATION, INC., THE DELTA ALLIANCE, LLC, DELTA PROPERTIES GROUP, LP, THE DELTA PARTNERSHIPS, LLC, PHOENIX CAPITAL CORPORATION, PHOENIX PROPERTIES GROUP GP | : | No. 2888 EDA 2023 |

Appeal from the Judgment Entered November 6, 2023
In the Court of Common Pleas of Chester County Civil Division at No(s):
2019-09263-CT

BEFORE: BOWES, J., KING, J., and BENDER, P.J.E.

MEMORANDUM BY BOWES, J.:            **FILED AUGUST 13, 2024**

The Delta Organization, Inc., The Delta Alliance, LLC, Delta Properties Group, LP, The Delta Partnerships, LLC, Phoenix Properties Group, GP, and Phoenix Capital Corporation (collectively "Logan Defendants") appeal from the judgment entered against them and in favor of American Lawsuit Funding, LLC

d/b/a Viking Funds, LP ("Viking") on the trial court's non-jury verdict.[1]   We affirm.

We glean the following facts primarily from the parties' stipulations.  **See generally** Joint Exhibits and Stipulations for Trial, 6/20/23.[2]   Walter Logan ("Logan") controls each of the Logan Defendants.  He is the sole member of Delta Partnerships, and he and his wife, Darleen Logan, own the Delta Organization.  The Delta Organization, in turn, is the sole partner of the Delta Properties Group.  Delta Partnerships and Delta Properties are the partners of Phoenix Properties Group ("PPG"), which is managed by the Delta Alliance.  PPG is the owner of real property in Chester County ("the Premises") on which an advertising billboard is located.  In June 2012, PPG entered into an agreement with Clear Channel Outdoor, Inc. ("Clear Channel") for the latter to use the billboard for a term of five years commencing in July 2012 with an annual rent of $31,900 ("the Lease").

_____

[1] The Logan Defendants purported to appeal from the trial court's July 23, 2023 verdict.  However, the appeal properly lies from the November 6, 2023 judgment entered on that verdict, and is treated as if timely filed on that date. **See Barrett v. M&B Med. Billing, Inc.**, 291 A.3d 371, 375 n.3 (Pa.Super. 2022) (noting that an appeal lies from the entry of judgment on a verdict, not from the verdict itself); Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof.").  We have amended the caption accordingly.

[2] The stipulations were filed as an attachment to Viking's June 21, 2023 pretrial statement and affirmed by the Logan Defendants in their June 23, 2023 pretrial statement before being admitted at trial on June 28, 2023, as Viking's Exhibit 17.

In May 2016, "the Logan Defendants and Viking negotiated and entered into a Purchase and Assignment Agreement (the 'VPAA')."[3] *Id*. at ¶ 13. In particular, through emails on May 13, 2016, Viking proposed the terms of the VPAA and Logan accepted them. The same day, before the Logan Defendants executed the comprehensive VPAA, Viking paid $100,000 to the Delta Alliance. With no executed copy of the VPAA in hand at the end of July 2016, Viking inquired as to its status, and the Logan Defendants responded by attempting to renegotiate its terms. After Viking rejected the proposed revisions, "[o]n August 23, 2016, the Logan Defendants signed the original VPAA, that was initially presented in May 2016." *Id*. at ¶ 19. The executed VPAA provided as follows:

> WHEREAS, Logan is the owner of [the Premises], such Premises having a Billboard erected thereon;
>
> WHEREAS, Logan is a party to [the Lease] for the lease of the Premises to Clear Channel to use the outdoor advertising structure or Billboard located on the Premises;
>
> WHEREAS, as under the Lease, Logan is presently entitled to an annual payment of $31,900.00 payable each year on July 1, such payment being subject to a five (5) year renegotiable term;
>
> WHEREAS, Logan seeks $100,000 for which Logan desires to sell to Viking an interest in the Premises and billboard Lease.

---

[3] As context for the agreement, the trial court indicated that Logan was seeking to borrow money from a third party to purchase real estate in Philadelphia for a development project, but that Logan had $100,000 in personal tax liens that impeded his efforts. Logan turned to Viking, a company in "the litigation finance business" whose principal had prior dealings with him, to supply the funds necessary to remove the liens. *See* Trial Court Opinion, 10/18/23, at 2. *See also* N.T. Trial, 6/26/23, at 8.

- 3 -

Viking desires to purchase the interest on the all [*sic*] those terms and conditions set forth in this Agreement;

NOW, THEREFORE, in consideration of the mutual covenants hereinafter set forth, the parties hereby agree as follows:

1. In consideration of Viking paying to Logan one-hundred thousand dollars ($100,000,00), the receipt and sufficiency of which is acknowledged, Logan hereby sells, transfers, conveys and assigns to Viking a one-half, or fifty per cent (50%), interest in and ownership of the Premises and Lease, and as further consideration agrees to repay to Viking $100,000 plus a forty-two per cent (42%) annual rate of return on any portion of the unpaid balance until it is repaid in full.  Logan agrees that until all obligations are satisfied under this Agreement, Logan shall pay to Viking all monies owed, received and paid to Logan under the aforementioned Lease[.[4]]

2. The parties intend and hereby agree that Logan can terminate Viking's interest in the Premises and Lease, and terminate Logan's obligation to repay the $100,000 or remaining portion thereof, including the 42% rate of return, by paying to Viking two-hundred and fifty thousand dollars ($250,000.00) on or before July 1, 2017.

3. The parties intend and further agree that if Logan does not terminate Viking's interest in the Premises and Lease before July 1, 2017 by satisfying all obligations under paragraphs 1. and 2. above, Logan can only terminate Viking's interest in the Premises and Lease at any time after July 1, 2017 by paying to Viking two-hundred and fifty thousand dollars ($250,000.00) plus any remaining amounts due and owing under paragraph 1.

IN WITNESS WHEREOF, the parties hereto have caused this Purchase & Assignment Agreement to be executed as of the date first written above.

_____

[4] An unexecuted version of the VPAA dated June 11, 2016, indicated that Logan was required to pay Viking only one-half of the payments he received from Clear Channel pursuant to the Lease.

By:  /s/ Walter Logan
Walter Logan on behalf of The Delta Organization, Inc., The Delta Alliance LLC, Delta Properties Group, L.P., the Delta Partnerships LLC and the Phoenix Property Group[5]


VIKING FUNDS

By:  /s/ Paul A. Graeff
Paul A. Graeff, Jr., on behalf of
Viking Funds

VPAA, 6/11/16, at 1-2 (identified as Joint Exhibit 1 in the parties' Joint Exhibits and Stipulations for Trial and admitted at trial as Exhibit P-1).

One week after executing the VPAA, the Logan Defendants paid Viking $15,950, or one-half of the money Logan received from Clear Channel pursuant to the Lease. "At some point before September 2, 2016, the Logan Defendants attempted to make additional payments to Viking, but the Logan Defendants informed Viking that the check would be returned due to insufficient funds." Joint Exhibits and Stipulations for Trial, 6/20/23, at ¶ 22. The Logan Defendants made no further payments to Viking. *Id*. at ¶ 21.

---

[5] Pertinent to our later discussion, although the VPAA does not indicate that Logan signed on behalf of Phoenix Capital Corporation, the parties' trial stipulation indicated that references to the "Logan Defendants" in the stipulations included each of the Delta entities as well as PPG and Phoenix Capital Corporation, and that these "Logan Defendants . . . negotiated and entered into" as well as "signed" the VPAA. *See* Joint Exhibits and Stipulations for Trial, 6/20/23, at 1, ¶¶ 13, 19. The Logan Defendants were all represented by the same counsel.

In June 2017, Viking inquired about the next annual payment due under the VPAA. The Logan Defendants informed Viking that they were in negotiations with Clear Channel about a lease term extension. In July 2018, PPG and Clear Channel agreed to extend the Lease for a five-year term at $44,660 per year, with 3% rent increases commencing after 2018.

In May 2019, PPG assigned its rights in the Lease to Landmark Infrastructure Holding Company, LLC ("Landmark"). Pursuant to that agreement, the Logan Defendants received $300,000 and directed Clear Channel to make all future lease payments to Landmark. "The Logan Defendants never sought Viking's consent to enter into the Landmark Assignment Agreement, the Logan Defendants never notified Viking of the Landmark Assignment Agreement after the fact, and the Logan Defendants never made any payments received ($300,000) under the Landmark Assignment Agreement to Viking." *Id*. at ¶ 28.

Viking initiated this action against the Logan Defendants and Landmark by complaint filed September 11, 2019, stating counts of breach of contract, partition and accounting, and declaratory judgment. Following discovery, the claims against Landmark were dismissed in April 2022 upon the grant of its motion for summary judgment. The case was initially listed for trial in the autumn of 2022 before the Honorable Edward Griffith, but it was reassigned to the Honorable Anthony T. Verway ("trial court").

- 6 -

On February 8, 2023, the Chester County Court Administrator mailed to all counsel and filed of record a trial listing letter, referencing the instant action, that stated as follows:

> You are hereby notified that you are attached for a Special Listing for a non-jury trial in the above-captioned case. **The attachment is for Wednesday, June 28, 2023**[,] **at 9:00 am in Courtroom No. 19**, The Honorable Anthony T. Verway presiding . . . . The attachment is for the length of the trial[.]

Trial Listing Letter, 2/8/23 (emphasis in original). A separate "event scheduled" docket entry was also made on that date reflecting the same, *i.e.*, attachment for a non-jury trial on June 28, 2023, before Judge Verway. On April 28, 2023, the trial court's law clerk reiterated the June 28 trial date in an email to counsel.

The Court Administrator sent a follow-up letter on June 14, 2023. This letter stated the following information about the trial listing:

> The above case is listed for trial from Monday, June 26, 2023, to Friday, July 21, 2023 before the Honorable Anthony T. Verwey in Courtroom 19. This case is listed as number 2.
>
> . . . .
>
> If you have any questions about any of these matters, please call this officer.

Motion to Reopen Record, 7/5/23, at Exhibit A (some capitalization omitted and punctuation supplied). The court's website likewise indicated that the case was second on the list of the cases scheduled before Judge Verway for the term running from June 26 to July 21, 2023. *Id*. at Exhibit B.

In the week before the trial listing, the parties filed pre-trial statements, reflecting their stipulated facts and joint exhibits, which included the VPAA and email correspondence between its signatories. Both sides filed their proposed findings of fact and conclusions of law by June 23, 2023. Viking presented a simple theory of the case, namely that the Logan Defendants failed to terminate Viking's interest in the Premises or otherwise pay in accordance with the VPAA, so Viking was entitled to be declared the one-half owner of the premises and to collect damages in the amount of missed payments with interest. *See* Viking's Pre-Trial Statement, at 1-2.

For their part, the Logan Defendants presented a convoluted tale of sabotage for economic gain by Viking's CEO, Richard Chakejian ("Chakejian"). They asserted that Logan created another Delta company, Delta Development, LLC, to acquire and develop twenty-five lots in Philadelphia, and gave Chakejian one-third ownership of that company in exchange for a guarantee of the repayment of the loans to finance the development. Chakejian then arranged for financing by the company Lava Funding ("Lava"). Before the closing, Lava discovered Logan's $100,000 tax lien and demanded he satisfy it. The Logan Defendants then borrowed the money from Viking at Chakejian's suggestion. After four of the lots had been developed, Lava demanded payment of the loan. Rather than negotiating an extension in good faith on Delta Development's behalf, Chakejian caused the project to fail, thereby ensuring that Logan would not be able to satisfy the terms of the VPAA.

Accordingly, Viking was not entitled to the requested judgment because the VPAA was but a part of a larger agreement between the Logan Defendants and Viking that was never intended to convey ownership of the Premises to Viking. *See* Logan Defendants' Pretrial Statement, 6/23/23, at 2-4.

On June 28, 2023, Viking appeared for trial with counsel, but neither the Logan Defendants nor their attorney had arrived. The court took a recess to determine their whereabouts and learned from the Logan Defendants' counsel that they were not aware that the trial was proceeding that day. The court elected to move forward with the trial. Viking called Chakejian as a witness to establish that Logan was in need of $100,000 to enable a loan closing to move forward and offered Viking an interest in the Premises so long as he had an option to buy it back. *See* N.T. Trial, 6/28/23, at 10-11. Chakejian further testified that the parties executed the VPAA after back-and-forth negotiations, but Logan only made one payment in accordance with the agreement, and never offered to return the $100,000 or otherwise make Viking whole. *Id*. at 11-12. Viking then offered the stipulations and joint exhibits into evidence and rested. The court directed Viking to submit proposed findings of fact and conclusions of law after it had an opportunity to obtain the transcript.

On July 5, 2023, the Logan Defendants filed a motion to reopen the record. Therein, their counsel indicated that he interpreted the Court Administrator's June 14 letter, which advised him that the case *sub judice* was

number two on the June 26-July 21 list, to have effectively "moved" this case from a June 28 start date to "stand-by" mode for commencement sometime during the week of June 26. **See** Motion to Reopen Record, 7/5/23, at ¶ 3-4. Counsel therefore informed his clients that he would be in touch after he received a call from the Court Administrator's office advising them when they would start trial. *Id*. at ¶ 4. Counsel asserted that he had been prepared to begin trial on June 26, "and was simply waiting to be given notice that the trial of the case that was listed as No. 1 on the [c]ourt's trial list had either settled or been concluded." *Id*. at ¶ 7. The Logan Defendants argued that "sending out letters with conflicting information concerning the date for starting the trial, coupled with the publication of inaccurate information on the [c]ourt's own website, clearly constitute[d] a break down in the court system." *Id*. at ¶ 13. Maintaining that the reliance on the second letter and the website was reasonable and that they had a meritorious defense to Viking's claims, the Logan Defendants requested that the court reopen the record for them to mount a defense. *Id*. at ¶¶ 13-14.

The trial court denied the motion by order of July 11, 2023. Therein the court indicated that all the letters received by counsel were accurate and none suggested that the parties should "expect a phone call when their case is up." Order, 7/11/23, at unnumbered 2 n.1. The court noted that, in addition to the letter and docket entries indicating that the case was specially listed for June 28, the parties had further received an email from the court's law clerk

on April 28, 2023, reiterating the June 28 trial date. *Id*. The court found that counsel's choice to make assumptions about how the trial list worked and how long the first case would take to be tried, and to eschew the June 28 date instead of contacting the Court Administrator or the trial court's chambers to confirm his beliefs, did not amount to a satisfactory excuse for failing to appear contemplated by the Rules of Civil Procedure. *Id*. at unnumbered 1-2, n.1.

Viking filed its proposed findings of fact and conclusions of law on July 12, 2023, therein citing the trial transcript which had been filed of record. Viking requested that the court declare it to own one-half of the Premises and to enter judgment against all the Logan Defendants, jointly and severally, in the amount of $681,097.15, which was composed of Clear Channel's annual rent payments from 2016 through 2022, one-half of the proceeds of the Landmark assignment, and simple interest at 6% per year. *See* Supplemented Proposed Findings of Fact and Conclusions of Law, 7/12/23, at 7, 9. The Logan Defendants did not propose any countervailing findings or conclusions.

On July 21, 2023, the court filed its decision, which culminated in a verdict in favor of Viking, but for far less than what was requested. Specifically, the court: (1) found all Logan Defendants liable for damages to Viking which, including prejudgment interest, totaled $328,214.51; (2) declared that Viking is a one-half owner with PPG of the Premises; and (3)

dismissed the count seeking partition and accounting based upon Viking's failure to pursue it. *See* Decision, 7/21/23, at 10.

The Logan Defendants thereafter filed a timely post-trial motion. Therein, they asserted that (1) the trial court erred or abused its discretion in proceeding with the trial, closing the record, and refusing to re-open the record because they had received "conflicting information regarding the date on which trial of this case was to begin and because the [c]ourt's official web site contained information regarding the trial date which also conflicted with previous notices," Post-Trial Motion, 7/27/23, at ¶¶ 1-3; (2) the evidence did not support a finding that Phoenix Capital was a party to, or breached, the VPAA, *id*. at ¶¶ 4-5; and (3) the evidence did not support the ruling that Viking owned a one-half interest in the Property, *id*. at ¶¶ 6-7.

Viking filed a response, arguing: (1) the Logan Defendants still had not offered a valid reason to reopen the record; (2) their theory of the case did not present a meritorious defense; (3) they waived any objections to the verdict against Phoenix Capital and the determination that the VPAA conveyed an interest in the Premises by not objecting to Viking's post-trial proposed findings and conclusions through the filing of their own proposed findings and conclusions; and (4) the Logan Defendants' claim that the VPAA did not convey an interest in the Premises was legally incorrect. *See* Brief in Response to Motion for Post-Trial Relief, 9/11/23, at 4-9.

By memorandum and order of October 18, 2023, the trial court denied the Logan Defendants' post-trial motion. This timely appeal followed, and both the Logan Defendants and the trial court complied with Pa.R.A.P. 1925.[6] The Logan Defendants present the following questions for our determination:

> 1. Did the trial court abuse its discretion and/or commit an error of law in refusing to reopen the record once counsel had provided it with a copy of the Court Administrator's letter of June 14, 2023 and a copy of a print out of the [c]ourt's web site, both of which expressly stated that the case was #2 in the court's trial pool rather than being specially listed to begin on June 28, 2023?
>
> 2. Did the trial court commit an error of law and/or abuse its discretion in: (a) determining that Phoenix Capital Group had breached the terms of the [VPAA]; and (b) entering a judgment against the Phoenix Capital Corporation where it is undisputed that the Phoenix Capital Corporation was not a party to the underlying [VPAA]?
>
> 3. Did the trial court commit an error of law and/or abuse its discretion in determining that [Viking] owns a one-half interest in the [Premises]?

Logan Defendants' brief at 9.

We begin with the Logan Defendants' challenge to the trial court's refusal to reopen the record. Rule 218 of our Rules of Civil Procedure governs this issue and provides as follows:

> **Rule 218. Party Not Ready When Case is Called for Trial**
>
> (a) Where a case is called for trial, if without satisfactory excuse a plaintiff is not ready, the court may enter a nonsuit on motion of the defendant or a *non pros* on the court's own motion.

---

[6] In fulfilling its Pa.R.A.P. 1925(a) obligations, the trial court indicated its reliance on the October 18, 2023 memorandum opinion addressing the Logan Defendants' post-trial motion. *See* Trial Court Opinion, 11/15/23.

(b) If without satisfactory excuse a defendant is not ready, the plaintiff may

    (1) proceed to trial, or,

    (2) if the case called for trial is an appeal from compulsory arbitration, either proceed to trial or request the court to dismiss the appeal and reinstate the arbitration award.

    . . . .

(c) A party who fails to appear for trial shall be deemed to be not ready without satisfactory excuse.

> *Note*:  . . .
>
> A decision of the court following a trial at which the defendant failed to appear is subject to the filing of a motion for post-trial relief which may include a request for a new trial on the ground of a satisfactory excuse for the defendant's failure to appear.

Pa.R.Civ.P. 218.

This Court has indicated that "a satisfactory excuse must be an excuse that would constitute a valid ground for a continuance." *Manack v. Sandlin*, 812 A.2d 676, 681 (Pa.Super. 2002) (cleaned up).  Ascertaining the validity of the grounds is within the broad discretion of the trial court, "and an appellate court should not disturb such a decision unless an abuse of that discretion is apparent." *Corrado v. Thomas Jefferson Univ. Hosp.*, 790 A.2d 1022, 1035 (Pa.Super. 2001).  "An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the results of partiality, prejudice, bias or ill-

- 14 -

will." *Id*. Examples of satisfactory excuses "include agreement of counsel; illness of counsel, a party, or a material witness; inability to maintain the testimony of an absent witness by means of discovery; or such other grounds as may be allowed by the court." *Breza v. Don Farr Moving & Storage Co.*, 828 A.2d 1131, 1135 (Pa.Super. 2003) (cleaned up).

Here, the Logan Defendants insist that the trial court abused its discretion in refusing to grant a new trial upon the proffering of the reasons for their failure to appear. Rather than addressing the definition of "satisfactory excuse," the Logan Defendants maintain that they provided "a reasonable explanation" for their failure to appear for the scheduled trial. *See* Logan Defendants' brief at 16. Likewise, instead of explaining how the circumstances would have demanded the grant of a continuance for the defense, they rely largely upon inapt case law governing entry of a *non pros* judgment when a plaintiff fails to appear or dismissal of an arbitration appeal when the defendant fails to appear. *Id*. at 11-14.

The trial court rejected the Logan Defendants' claim of error as follows:

All parties were given notice of the June 28th trial date through their counsel. On February 8, 2023, Court Administration issued a letter advising counsel of their trial attachment. Defendants' counsel admits receiving the letter. The letter was twice placed on the docket, on February 8, 2023, and March 2, 2023, with the notation, "TRIAL LISTING LETTER — SPECIAL LISTING." My law clerk sent an email on April 28, 2023, setting forth my requirements for trial, which reiterated the trial date of June 28, 2023. Defendants' counsel admits receiving this email. Defendants' counsel claims to have been misled by the trial list issued by Court Administration on June 14, 2023, stating that the case was No. 2 on the list; the trial list is also published on the

- 15 -

Court's website. . . . The trial list and the letter are accurate. This case was to be the second tried during the trial term starting June 26, 2023, and trial in the first case was commenced on June 26th. Defendants' counsel states that he made certain assumptions about how the list operated and how long the first case would take to be tried. Court Administration's letter does not advise counsel to expect [a] phone call when their case is up. Had counsel needed to know how the first case was progressing, Court Administration or my chambers could have answered his questions. [The Logan] Defendants have not offered a satisfactory excuse for failing to appear for trial.

Trial Court Opinion, 10/18/23, at 5-6 (quoting Order, 7/11/23, at 1-2 n.1).

We discern no abuse of discretion. There is nothing inherently conflicting or contradictory about being told the case is both (a) second on a trial list that begins on June 26 and (b) specially listed to begin trial on June 28. It was not an inadvertent or reasonable choice for counsel to assume that listing another, first case two days before the instant case's longstanding specific date within the trial term somehow negated that special listing or moved the case down the list. Hence, the trial court did not err in concluding that the Logan Defendants did not provide a satisfactory excuse for neither appearing as scheduled nor being prepared to attend trial when the court called to see why he and his client were not there. No relief is due.

The Logan Defendants' remaining issues challenge the factual and legal sufficiency of the court's verdict. In this vein we observe:

Our review in a non-jury case is limited to whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. We must grant the court's findings of fact the same weight and effect as the verdict of a jury and, accordingly, may disturb the non-jury verdict only if the court's findings are unsupported by competent

- 16 -

evidence or the court committed legal error that affected the outcome of the trial. It is not the role of an appellate court to pass on the credibility of witnesses; hence, we will not substitute our judgment for that of the fact-finder. Thus, the test we apply is not whether we would have reached the same result on the evidence presented, but rather, after due consideration of the evidence which the trial court found credible, whether the trial court could have reasonably reached its conclusion.

***Nat'l Brokers of Am., Inc. v. Jordan***, 307 A.3d 1206, 1217 (Pa.Super. 2023) (cleaned up). We review the court's denial of a motion for post-trial relief for an error of law or abuse of discretion. ***See***, ***e.g.***, ***Spencer v. Johnson***, 249 A.3d 529, 549 (Pa.Super. 2021).

The Logan Defendants claim that the trial court's ruling that Phoenix Capital Corporation breached the VPAA was not supported by the evidence. Their entire argument is as follows:

> In the instant case, the court entered a judgment in the amount of $328,214.51 against all of the defendants, including the Phoenix Capital Corporation resulting from their alleged breach of the underlying [VPAA]. A review of the [VPAA], however, reveals that the Phoenix Capital Corporation was not a party to it. Because it is well established that a person or entity that is not a party to a contract cannot be held liable for breaching it, ***Roman Mosaic & Tile Co. v. Vollrath***, 313 A.2d. 305 (Pa.Super. 1973), it is respectfully submitted that the court's determination that the Phoenix Capital Corporation had breached the terms of that agreement is not supported by substantial evidence.

Logan Defendants' brief at 17-18 (cleaned up).

The trial court addressed this issue thusly:

Upon review, the Phoenix Capital Corporation was not listed as party to the VPAA. However, the parties' joint stipulations entered into for trial and submitted at trial, recite:

13. On May 13, 2016, the Logan Defendants and Viking negotiated and entered into a Purchase and Assignment Agreement (the "VPAA").

. . . .

19. On August 30, 2016, the Logan Defendant[s] signed the original VPAA, that was initially presented in May 2016.

The "Logan Defendants" are defined on the first page of the joint stipulations as, "The Delta Organization, Inc., The Delta Alliance, LLC, Delta Properties Group, L.P., Delta Partnerships, LLC, Phoenix Property Group, GP, and **Phoenix Capital Corporation**" (emphasis added). . . . While a party who is not a party to contract cannot be held liable for its breach, in this instance the parties have stipulated that Phoenix Capital Corporation was a party to the VPAA. Accordingly, it was not error to enter judgment against it.

Trial Court Opinion, 10/18/23, at 13-14 (citations omitted).

We conclude that the trial court committed no error of law or abuse of discretion in refusing to grant post-trial relief as to Phoenix Capital. It is well-settled that "[a] stipulation of facts is binding and conclusive on a trial court[.]" ***Mader v. Duquesne Light Co.***, 241 A.3d 600, 615 (Pa. 2020). Consequently, a party cannot "validly complain about a stipulation to which he agreed." ***Phillips v. Schoenberger***, 534 A.2d 1075, 1079 (Pa. 1987).

There are instances when a non-party may be liable for a breach of contract, such as corporate successor liability or piercing the corporate veil. ***See Fizzano Bros. Concrete Products, Inc. v. XLN, Inc.***, 42 A.3d 951, 969 (Pa. 2012); ***In re Dravo LLC***, 307 A.3d 146, 154 (Pa.Super. 2023). However, since the Logan Defendants stipulated that Phoenix Capital, as one

of "the Logan Defendants," in fact entered into the VPAA with Viking, Viking had no incentive to establish a non-signatory basis for Phoenix Capital's liability at trial. Phoenix Capital cannot now fault Viking for failing to prove something that was obviated by the stipulation to which Phoenix Capital agreed. *See Phillips*, 534 A.2d at 1079.

Finally, the Logan Defendants assert that the trial court committed an error of law in finding that the VPAA conveyed an ownership interest in the Premises to Viking. They argue that the "facts and circumstances surrounding the execution of the [VPAA,] as well as the post-execution activities of the parties, compels the conclusion that neither [Viking] nor . . . Logan intended the [a]greement to serve as a deed conveying one-half interest in the [Premises] to [Viking]." Logan Defendants' brief at 18-19. In particular, the Logan Defendants point to: (1) "the simple fact that the document in question was captioned "Purchase and Assignment Agreement," as opposed to "Deed;" (2) the VPAA "contains none of the provisions that are commonly found in . . . deeds," such as referring to the parties as grantor and grantee, including a metes and bounds description of the property, and being signed by witnesses; (3) the fact that both parties signed the VPAA although a deed only requires the signature of the grantor; (4) the inability of the VPAA to be recorded, given the absence of the above-referenced deed language; (5) the parties' failure to treat the VPAA as a deed by attempting to record it and pay real estate transfer tax; and (6) Viking's failure to inform Clear Channel of its part

ownership of the Premises and to demand that Clear Channel directly pay Viking its share of the annual rent. *Id*. at 19-21.

The trial court proffered the following defense of its declaration that Viking owned one-half of the interest in the Premises:

> On its face, the VPAA is clear and unambiguous, and the intent of the parties can be ascertained from the document itself. The VPAA acknowledges payment of consideration of $100,000.00 to [the Logan] Defendants by Viking for which [the Logan] Defendants "hereby sells, transfers, conveys and assigns to Viking a one-half, or fifty percent (50%), interest in and ownership of the Premises and Lease." The adverb "hereby" demonstrates the intent to accomplish something by the words that follow. Black's Law Dictionary (11th ed. 2019). The word "convey" is sufficient to pass fee simple title to the premises conveyed. [*See*] 21 P.S. § 2.[6] A deed is not necessary to transfer property; an "instrument in writing" will do. *Id*. To be enforceable against the assignor, an assignment of an interest in land need only include an adequate description of the property, a recital of the consideration, and the signature of the assignor. *Zuk v. Zuk*, 55 A.3d 102, 107 (Pa.Super. 2012). A description of the property is adequate where it describes a particular piece or tract of land that can be identified, located, or found. *Id*. The first whereas clause of the VPAA defines the "Premises" as "real property located at N/O Nutt Road, E/O Township Line Road at the intersection of Route 23 and Route 113 in Phoenixville, Pennsylvania, tax parcel number 15-7-15." . . . Logan signed and initialed each page of the VPAA on behalf of [the Logan] Defendants. The [Logan] Defendants made a valid transfer of a one-half interest in and ownership of the [Premises] to Viking. . . . There was no need for the court to consider extrinsic evidence of the parties' intent since no ambiguity exists.
>
> _____
> [6] "[I]n any deed or instrument in writing for conveying or releasing land hereafter executed, unless expressly limited to a lesser estate, the words 'grant and convey,' or either one of said words, shall be effective to pass to the grantee or grantees named therein a fee simple title to the premises conveyed, if the grantor or grantors possessed such a title[.]" 21 P.S. § 2.

Trial Court Opinion, 10/18/23, at 11-12.

The trial court did not err in holding that the language of the VPAA unambiguously conveyed a one-half interest in the Premises to Viking. As such, extrinsic evidence was not admissible to prove the intent of the parties. *See*, *e.g.*, ***Ramalingam v. Keller Williams Realty Grp., Inc.***, 121 A.3d 1034, 1046 (Pa.Super. 2015) ("When a writing is clear and unequivocal, its meaning must be determined by its contents alone. Only where a contract's language is ambiguous may extrinsic or parol evidence be considered to determine the intent of the parties." (cleaned up)). The fact that the agreement provided the Logan Defendants opportunities to buy that interest back from Viking did not negate the conveyance. Since the parties stipulated that the Logan Defendants did not make the requisite payments to Viking to avail itself of those opportunities, the trial court's declaration of Viking's ownership was proper.

Therefore, since none of the Logan Defendants' arguments reveals that the trial court abused its discretion or committed an error of law in proceeding to trial without their presence, entering its verdict in favor of Viking, and denying their post-trial motion, we have no cause to disturb the court's verdict and judgment.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 8/13/2024